Nott, J.,
delivered tire opinion of the court:
This is an action brought to recover the net proceeds of 12 bales of upland and of half a bale of sea-island cotton captured at Savannah. The proceeds now in the Treasury are alleged to amount to $7,636.
It is conceded in this case that the four essential facts required by the Abandoned or captured property act have been established — that the claimant did not give aid or comfort to the rebellion j that he owned the cotton; that it was captured; and that the proceeds are now in the Treasury. The only question in the case arises under the Act 27th July, 1868,(15 Stat. L., p. 243, § 2,) which controls the right of aliens to maintain suits against the government or its officers under the Abandoned or captured property act That privilege is limited by the statute to those u aliens who are citizens or subjects of any government which accords to citizens of the United States the right to prosecute claims against such government in its courts.”
The claimant is an alien — a native of Hanover — a subject of Prussia. The last qualification is, however, controverted by the defendants for the reason that “ Hanover, by conquest, in 1866 became incorporated in the Kingdom of Prussia.”
And it is insisted “ that the claimant, domiciled in this country at the time of the conquest, was not affected by the conquest of his native country; that he never became a subject of the King of Prussia.”
The theory of the objection is, that the privilege of suing in this court “ is founded on the idea of reciprocity,” and the claimant being an alien, domiciled here when the nationality of his country was extinguished, did not become a subject of Prussia, and is, as it were, “ a man without a country,” who has “nothing from which to reciprocate.”
We cannot accept the idea that the matter of domicile affects the fact of citizenship nor that a mere foreign residence of itself can work a forfeiture of political rights.
When the territory and government of a kingdom pass to, and become merged in, the territory and government of another nation, all of its subjects pass also. The tie which binds and carries them is not bodily presence, but allegiance.
The sufficiency of the proof of Prussian law on this point is also denied. The law comes to us upon the authority of the *576 “Royal Minister of state and justice,” who certifies, through our Department of State, “tl^at suits between the chief of the nation and his subjects are to be brought and decided in the common courts of justice in accordance with law.” And that “the expression ‘ chief of the nation’ includes the treasury, and that, in accordance with the definition of the above quoted legal phrase, citizens of foreign countries in Prussia may enjoy the same •privileges in regard to legal protection and defence as our oion subjects, and similar rights of action against the national exchequer. The right to bring such claims before the Prussian courts belongs, to the same extent, as much to citizens of the United States of America as to Prussian subjects.”
It is also shown by Mr. Frederick Kapp, a member of the New York bar, but who for three years practiced law in the courts of Prussia, as a matter of fact within his personal knowledge, that this right is exercised by foreigners, and that this provision of the Prussian law prevails in Hanover.
Neither of these witnesses is explicit in statutory reference; but in such cases the court takes the law from the witness, and a witness is competent who has been duly admitted to practice iu the courts of the country, and knows the legal fact of which he affirms. That he has not practiced recently will lessen the weight of his testimony, bat not destroy his competency. Here the testimony cited certainly presents a case prima facie.
A point is also suggested by the vigilant counsel of the Treasury in the fact that a “difference is that foreigners have to give security for costs; others need not do it.”
Security for costs may be an inconvenience, but cannot be considered in a legal sense the denial of a right. In our own country the citizen of one State is generally required to give security when appearing as a plaintiff in the courts of another; yet no one ever regards the requirement as a bar to judicial redress. Congress could hardly have intended to exact from foreign governments in this particular a greater liberality than is common among our own States. The restriction rests not on prejudice to the foreigner, but on the fact that the process of the court runs not to the domicile of the suitor. Poverty, heedlessness, a hundred like causes, daily prevent the due administration of human justice, yet noue can be regarded' as constituting a legal impediment to the attainment of a judicial right.
*577 It is a curious fact, not now generally known, that the example of Prussia and the German States in guarding’ the private rights of persons by subjecting the government in matters of contract to the judicial power of ordinary courts of justice, led to the establishment of the Court of Claims.
In a report made to the House of Representatives in 1848, a distinguished member, after showing (with many other suggestive facts) that out of 17,573 private claims presented to Congress, 8,948 were never even considered, thus spoke:
“ The chairman of the committee has obtained from the ministers of the several leading governments of Europe statements as to the course pursued iu claims against the governments of Russia, Austria, and the smaller German States, and in Holland, and one other nation. In relation to all mere matters of contract and ordinary trespasses, the government is heard in the ordinary tribunals of the country, which are governed precisely by the same rules of law iu these cases as between individuals. These governments, although far behind us in civil freedom and constitutional liberty, never shrink from the full and fair investigation of the claims, and always submit to an adverse decision by the courts. It has been left to our own government to deny to the citizen who has a demand against it the power to try the question before its own courts, and yet has furnished no adequate tribunal for the purpose.
“Not having already access to the works of the jurists of the several nations, the intelligent gentlemen, who have given the statement in relation to the laws and usages of the European and other nations on this subject, have necessarily given a general statement. The information, however, thus furnished, the committee regard as entirely reliable and of great value, and insert the various letters at length and append them to this report.
“ They all agree in stating that it is an established rule of the German common law, and one which is adopted and practiced upon by all the German States, ‘that,’ as stated by Baron Gerolt, the Prussian minister, ‘claims against the government are to be examined and decided by the common courts of justice, and in the way of a common lawsuit.™ (Report by Hon. J. A. Rockwell, from Committee of Claims, House of Representatives, April 26, 1848, first session Thirtieth Congress, vol 3.)
The precise manner in which suits against the Prussian gov- *578 eminent are brought and prosecuted, is thus detailed by the witness in this case, Mr. Kapp, of the New York bar:
“ The state represented in its pecuniary capacity as the representative of money and property affairs, is called the Mseus ; and this Fiscus is a quasi corporation, and has standing in its courts like any other party; it sues and is sued. For the purpose of maintaining suits against the government, the Fiscus stands in the place of the government; for the purpose of compelling the payment of demands against the state, the Fiscus is substituted for the state itself. I know of no restriction of the rights of subjects of Prussia to maintain any suits against the Fisctos; subjects, as well as foreigners — any man can sue the Fisctos; the power to maintain a suit against the Fiscus is a matter of absolute right, rather than of favor. The only difference is that'foreigners have to give security for costs; others need not do it. American citizens have the same right to maintain their action against the Fiscus as Prussian citizens. Under the name of ‘Fiscus,7 are comprised all kinds of state revenues which flow from the right of laying taxes or duties, or from special state property, or from royal usufructs. Suits in relation to state property, in which the Fiscus is either plaintiff or defendant against others, are treated and decided like suits among private parties, and likewise all the consequences of default and executions take place against the Fisctos as well as against private parties. The Fiscus is brought into court by the service of summons and complaint on the Fiscal attorney, but if his name should not be known, or if parties did not know him, it is served on the president of the government of that circle, the Frcisidium der Begierung. Each province has got what they call a superior president; the proper title is 1Oberprasidium,7 and under this upper president are two or three, according to the size of the province. Each circle has a president, we style him ‘ Frcisidium der Begierung ;’ ‘ over president’ is the chief of the whole province in all administrative matters; ‘ president,’ for each circle. The Fiscal attorney has to answer just like any other party and bring his proof, and has to make his answer. Judgments rendered against the Fiscus are satisfied and discharged in the usual way by execution.”
The judgment of the court is, that the claimant recover of the defendants the sum of $2,219 88.